**Thomas WYSE, et al., Appellants,**

v.

**DEPARTMENT OF PUBLIC SAFETY, et al., Appellees.**

No. 10–86–058–CV.

Court of Appeals of Texas,
Waco.

Oct. 30, 1986.

Rehearing Denied Nov. 20, 1986.

Greg White and Andy McSwain, McGregor & White, Waco, of counsel: (David Guinn, of counsel), for appellants.

Jim Mattox, Atty. Gen., Mary F. Keller, Exec. Asst. Atty. Gen. for Litigation, F. Scott McCown, Asst. Atty. Gen., Chief, Enforcement Div., Gabriel G. Quintanilla and Edith C. Schaffer, Asst. Atty. Gen., Austin (Tony E. Duty, Waco, of counsel), John W. Fulbright, Fulbright, Winniford, Bice & Marable, Waco, Ogle Ted Beaty, Whitney, Tony E. Duty, Waco, for appellees.

### OPINION

McDONALD, Chief Justice.

This is an appeal from summary judgment that plaintiffs take nothing. Plaintiffs, former City of Hillsboro Police Officers Thomas Wyse and H.E. Wardlow,[1] sued defendants: District Attorney Dan Dent, Sheriff of Hill County Brent Button and Texas Rangers Robert Mitchell and James Ray, for tortious interference with business relations and invasion of privacy under the Texas common law, and sued defendant Department of Public Safety of the State of Texas (DPS) under the Texas Tort Claims Act.

Sheriff Button received information from convicted felon Floyd Junior Garner indicating plaintiffs Hillsboro Police Officers Wardlow, Wyse and Parris were engaged in illegal activity. Defendant Sheriff Button made defendant District Attorney Dent aware of the matter and Button and Dent requested an investigation by the Department of Public Safety. Ranger Ray made the investigation under Ranger Captain Mitchell's supervision; a report of such investigation was prepared which contained the statements of two convicted felons implicating plaintiffs in criminal activity including the purchase of stolen property and the selling of marihuana. Captain Mitchell called a meeting in Waco attended by defendants and Mayor of Hillsboro Rhodes. Captain Mitchell gave a copy of the report to Mayor Rhodes. Mayor Rhodes thereafter contacted the Department of Public Safety and informed them that a decision had been made to fire plaintiffs; and thereafter plaintiffs were terminated by the City of Hillsboro.

Defendants moved for summary judgment that plaintiffs take nothing. Defendants Mitchell, Ray, Dent and Button asserted that: (1) official immunity shields them from liability on all claims arising from their activities as law enforcement agents; (2) all reports issued during an investigation of police corruption by members of the Hillsboro Police Department are absolutely privileged; and (3) all reports are qualifiedly privileged which bar recovery unless malice is shown (and plaintiffs admit no malice is attributed to Mitchell and Ray). Defendant DPS asserted immunity from suit under the Texas Tort Claims Act.

---

1. Chief of Police Herman Parris, a plaintiff in the suit below, took a non-suit.

The trial court granted defendants' motion and rendered a summary judgment that plaintiffs take nothing.

Plaintiffs appeal on one point: the trial court erred in rendering summary judgment in favor of any or all of the defendants because:

A. It was erroneous to render summary judgment on the basis of affirmative defenses characterized by defendants as official immunity.

B. It was erroneous to render summary judgment when fact issues existed on the causes of action alleged by plaintiffs.

C. It was erroneous to render summary judgment where defendants failed to conclusively prove their affirmative defenses.

D. It was erroneous to render summary judgment on the basis of affirmative defenses characterized as sovereign immunity.

The summary judgment record reflects: plaintiffs were police officers of the City of Hillsboro; defendant Dent was District Attorney of Hill County; defendant Button was Sheriff of Hill County; defendants Mitchell and Ray were Texas Rangers; and defendant Department of Public Safety was an agency of the State of Texas, at all times pertinent to this case.

On June 10, 1983, Ranger Gunn was contacted by Hill County Sheriff Button requesting him to interview Floyd Junior Garner who was in the Hill County Jail. In this interview Garner made numerous allegations of illegal activities involving plaintiffs. Sheriff Button took Garner to Waco on June 16, 1983, where a polygraph was administered. No deceptive criterion was detected. On June 16, 1983, District Attorney Dent and Sheriff Button by letter requested Colonel Adams of the DPS for an investigation regarding information received from Garner, if the Rangers felt an investigation was warranted. An investigation was subsequently authorized by Colonel Adams. Captain Mitchell had supervisory responsibility for the investigation but assigned Ranger Ray to do the actual investigation with assistance from Rangers Gunn and Brownlow. During the course of the investigation Ranger Ray took statements from Garner and Danny Scott Carter, both of whom had long criminal records. These statements implicated plaintiffs in various criminal activities. Polygraph examinations administered to Garner and Scott failed to show any evidence of deception. Ranger Ray prepared a report and forwarded it to Captain Mitchell. Captain Mitchell then requested Sheriff Button to come to Waco to his office and bring District Attorney Dent and Mayor of Hillsboro Rhodes. On September 15, 1983, a meeting was held in Captain Mitchell's office with Button, Dent, Rhodes and Ray present, during which meeting Captain Mitchell disclosed the results of the investigation. Captain Mitchell and District Attorney Dent both stated that because there was no corroborating evidence to Garner and Carter no attempt would be made to obtain a grand jury indictment. Captain Mitchell stated that though the polygraph examination of Garner and Scott showed no evidence of deception, that such was not admissible in court. Captain Mitchell then gave a copy of the report to Mayor Rhodes with instructions that the report must not be shown to anyone and must not be copied but that it could be discussed with City Manager Ward and City Attorney Dohoney. Mayor Rhodes discussed the report with Ward and Dohoney. The following day, September 16, 1986, City Manager Ward met with plaintiffs and told them of the allegations and told them if they did not agree to take a polygraph examination they would be terminated. They refused and were terminated. The termination was later rescinded; the officers were furnished a copy of the Rangers' report (by order of the District Judge on joint motion of plaintiffs and the City); the officers were reinstated with pay, an administrative hearing was set; the plaintiffs did not appear at the hearing or take a polygraph, and were terminated on November 21, 1983. Plaintiffs sued the City of Hillsboro and City Manager Ward in Federal Court which was settled by the parties.

Plaintiffs then filed this suit against defendants Button, Dent, Mitchell, Ray and the DPS.

The standards for reviewing a motion for summary judgment in Texas are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management*, S.Ct. Tex., 690 S.W.2d 546, 548–49 (1985).

The basic question in this case is whether Appellees' actions are shielded from liability by governmental immunity. To answer this question, we must first determine whether the actions were ministerial or discretionary. Discretionary actions are those which require personal deliberation, decision and judgment, while ministerial actions require obedience to orders or the performance of a duty as to which the actor is left no choice. *Austin v. Hale*, CA Tex.App. (Waco) NWH, 711 S.W.2d 64, 67 (1986); *Baker v. Story*, CA Tex.Civ.App. (San Antonio) NRE, 621 S.W.2d 639, 645 (1981). From the record all of the actions taken by the public officials in regard to the investigations of Appellants were discretionary actions. Discretionary actions are quasi-judicial in nature. *Austin*, 711 S.W.2d at 67; *Baker*, 621 S.W.2d at 645. Additionally, when a state employee gathers facts and then acts, such actions are quasi-judicial as well. *Austin*, 711 S.W.2d at 66; *Augustine by Augustine v. Nusom*, CA Tex.App. (Houston 14) NRE, 671 S.W.2d 112, 115 (1984).

Under the doctrine of official immunity, public officials whose actions may be classified as quasi-judicial enjoy immunity from personal liability as long as they act with good faith within the scope of their authority. *Austin*, 711 S.W.2d at 66; *Augustine*, 671 S.W.2d at 115; *Baker*, 621

S.W.2d at 644. Mitchell and Ray, acting under their authority as Texas Rangers, were acting within the scope of their authority in conducting the investigation of alleged illegal activities concerning Appellants. *See* TEX.CODE CRIM.PROC.ANN. art. 2.13 (Vernon 1977). The Supreme Court stated: "Where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982) (*quoting Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967)). Mitchell and Ray were clearly acting in good faith in conducting the investigation in accordance with their duties as peace officers for the State of Texas. Thus, the doctrine of official immunity shields Mitchell and Ray from personal liability to Appellants.

The acts of District Attorney Dent and Hill County Sheriff Button were quasi-judicial acts done by them in the exercise of their quasi-judicial functions, and since they are officers whose duties are related to the judicial process, they are entitled to immunity. *Anderson v. Higdon*, CA Tex. App. (Waco) NWH, 695 S.W.2d 320, 324 (1985); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

To be entitled to a summary judgment on the affirmative defense of official immunity, Appellees Mitchell, Ray, Dent and Button had to establish as a matter of law that their positions as government officials had a quasi-judicial status and that they were acting in good faith within their authority as quasi-judicial employees when they conducted the investigation of Appellants and when they released the investigation reports. *See Austin*, 711 S.W.2d at 66; *Baker*, 621 S.W.2d at 644. Mitchell, Ray, Dent and Button were all acting in good faith under their quasi-judicial status as government employees, and they were thus entitled to a summary judgment on the affirmative defense of official immunity.

**228**

As to the liability of the DPS, the State is not liable for torts of its officers or agents in the absence of a statutory waiver of the sovereign immunity. Before the State of Texas granted the limited waiver of sovereign immunity, the State and its agencies and political subdivisions had full immunity from liability from torts. *State v. Brannan*, CCA Tex.Civ.App. (Waco) writ ref'd, 111 S.W.2d 347 (1937). The State retains that immunity except to the extent waived by the Texas Torts Claims Act. *Duhart v. State*, S.Ct.Tex., 610 S.W.2d 740 (1980); *Lyons v. Texas A & M University*, CCA Tex.Civ.App. (Houston 14) NRE, 545 S.W.2d 56 (1976). Therefore, to maintain a cause of action against the State, plaintiffs must plead and pursue their cause of action under the express terms of the Tort Claims Act. *Duhart, supra.* Our Supreme Court in *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex.1976), paraphrased that portion of Section 3 of the Tort Claims Act pertinent here as follows:

> Each unit of government in the state shall be liable for money damages for ... personal injuries or death when proximately caused by the wrongful act or omission of any officer or employee acting within the scope of his employment or office ... from *some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state.*

*Id.* at 299. In plaintiffs' original petition they alleged that termination of their employment "was caused by some condition or use of tangible property—namely, a polygraph machine".

We think plaintiffs' allegations and contentions as to the DPS are outside the purview of the Tort Claims Act. Moreover, the DPS's liability is necessarily predicated on some act on the part of Rangers Mitchell and/or Ray for which they would be liable to the plaintiffs. Mitchell and Ray have both been found, supra, not to be liable to plaintiffs. The DPS thus is likewise not liable to plaintiffs, and for this additional reason the summary judgment in favor of the DPS was properly rendered against the plaintiffs. The summary judgment as to all defendants was properly granted. Plaintiffs' point of error is overruled.

AFFIRMED