HARRIS COUNTY, Deputy Natho and Deputy Glazier, Appellants,

v.

Lilia OCHOA, Individually and as Representative of the Estate of Jose Ochoa Gonzales, Deceased, Richardo Ochoa Rodriguez, Martha de la Garza and Carlos de la Garza, Individually, and as Next Friends of Cesar Gabriel de la Garza, a Minor, Appellees.

No. C14–93–00714–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 1994.

Rehearing Denied Aug. 25, 1994.

Barbara Baruch, Houston, for appellants.

Robert G. McConn, Pat Tulinski, Houston, for appellees.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an interlocutory appeal of the denial of a motion for summary judgment in a personal injury, wrongful death, and survival action. Appellees, Lilia Ochoa, Individually and as Representative of the Estate of Jose Ochoa Gonzales, Deceased, Richardo Ochoa Rodriguez, Martha De La Garza and Carlos De La Garza, Individually, and as Next Friends of Cesar Gabriel De La Garza, a Minor, filed suit against Juan Carlos Guiterrez and appellants, Deputy Dewain Myles Natho, Deputy William Arthur Glazier, and Harris County. Appellees alleged that the deputies were negligent in initiating and maintaining pursuit of a vehicle driven by Guiterrez and that Harris County was vicariously liable for such negligence. Appellants answered by general denial and raised the affirmative defenses of governmental, official and qualified, good faith immunity. Appellants then moved for summary judgment claiming that they were immune from civil liability for their negligence as a matter of law. The trial court denied the motion. In two points of error, appellants contend that the trial court erred in denying their motion for summary judgment based on official and governmental immunity. We reverse and render.

We will view the facts in the light most favorable to the non-movants, appellees. Around 1:49 a.m. on October 27, 1991, Deputies Dewain Myles Natho, William Arthur Glazier, and Curtis Stevenson of the Harris County Constable's Office were on routine patrol. The deputies were in front of a Stop–N–Go convenience store at the intersection of Wilcrest and Briar Forest. Deputy Stevenson was sitting in his patrol car talking to Deputies Natho and Glazier, who were standing at his driver's side door. Deputy Stevenson heard a vehicle's tire hit the curb on Wilcrest.

Deputies Natho and Glazier ran and jumped into their patrol car and followed the vehicle driven by Juan Carlos Guiterrez down Wilcrest. Deputy Stevenson started his car and pulled out onto Wilcrest. He accelerated to catch up with the other deputies. Deputy Stevenson saw the other deputies turn left onto Westheimer and heard Deputy Natho call dispatch with a license plate number. Deputy Natho then called the station again with the license plate number and advised them that they were westbound on Westheimer. Deputy Stevenson heard Deputy Natho call again and state "it looks like they're going to run," and then "they're running." The vehicles were speeding at a high rate of speed.

Dispatch then called Deputy Stevenson's unit, and he advised them that he was already in the pursuit. Following behind the

other deputies on Westheimer, Deputy Stevenson could see the deputies ahead with their emergency lights on. Deputy Stevenson activated his emergency equipment and proceeded westbound on Westheimer. He later heard Deputy Natho call dispatch and tell them "to notify the city so we can get some help with this." Deputy Stevenson noted that it was difficult to hear Deputy Natho over the radio because of both of their sirens. As Deputy Stevenson approached the intersection of Westheimer and Grey Falls, he could see the deputies approach the intersection of Westheimer and Dairy Ashford. Guiterrez drove through a red light at the intersection of Westheimer and Dairy Ashford and collided with Caesar Gabriel De La Garza's pick-up truck, injuring him and killing his grandfather, Jose Ochoa Gonzales, who was a passenger in the truck.

Generally, the denial of a summary judgment is interlocutory and unappealable. *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454 (Tex.1982). However, appellants brought this appeal pursuant to section 51.014(5) of the Texas Civil Practice and Remedies Code, which allows officers or employees of the state or its political subdivision to appeal a denial of a motion for summary judgment based on an assertion of immunity. Tex.Civ. Prac. & Rem.Code Ann. § 51.014(5) (Vernon Supp.1994). Because of the limited appellate jurisdiction of this appeal, we will only address the immunity defense and not the merits of the case.

In their first and second points of error, appellants assert that the trial court erred in denying their motion for summary judgment based on official and governmental immunity. Specifically, appellants argue that they conclusively proved all the essential elements of their immunity defense, and there were no genuine issues of material fact.

We must apply the same standard of review for the denial of a summary judgment as for the granting of a summary judgment. The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether a disputed material fact issue exists, the evidence must be viewed in favor of the non-movant, resolving all doubts and indulging all reasonable inferences in her favor, and it is taken as true. *Id.* at 548. A defendant as movant must either: (1) disprove at least one element of each of plaintiff's theories of recovery; or (2) plead and conclusively establish each essential element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). If the movant establishes his right to judgment as a matter of law, the burden shifts to the non-movant to raise fact issues precluding summary judgment. *Id.* at 678.

A summary judgment may be upheld on appeal on only those grounds expressly set out in the motion for summary judgment. Tex.R.Civ.P. 166a(c); *Brooks Fashion Stores, Inc. v. Northpark Nat'l Bank*, 689 S.W.2d 937, 941 (Tex.App.—Dallas 1985, no writ).

In their motion for summary judgment, appellants asserted that no genuine issues of material fact existed, and they were entitled to summary judgment as a matter of law. Specifically, appellants argue that Deputies Glazier and Natho were entitled to qualified or official immunity from suit. Further, they argued that Harris County was not vicariously liable absent the liability of the deputies and that it was immune from liability for the claims pled against it for its own acts.

Appellants rely solely on the affidavits of Deputy Glazier and Deputy Natho as summary judgment proof to support their motion. Deputy Glazier's affidavit stated in part:

When I made the decision to stop Juan Carlos Guiterrez' vehicle, I knew that he had driven in a way that was dangerous to the public, because he barely missed the pedestrian on the sidewalk on Wilcrest, and because he fled from my vehicle. When I decided to pursue Juan Carlos Guiterrez, I believed that the time of night, the minimal traffic, the commercial nature of the area in which nearly every store was closed to business, and the large road with numerous lanes on which we were traveling all diminished any risk from the chase itself, while Guiterrez posed a significant

risk to the public. I believed, and in my opinion any reasonably prudent police officer in my position would also believe that during the pursuit the need to stop Juan Carlos Guiterrez's vehicle outweighed the risk to the public by way of pursuit.

During the pursuit, I had my emergency lights and siren on, as well as my headlights. I never went through a red light or through a stop sign during the entire chase. The chase lasted less than two (2) minutes before I dropped back because of increase risk to the public, and slightly longer than two minutes until the accident occurred.

Deputy Natho's affidavit read in part:

In my opinion, considering the road (8 lanes), weather (clear and dry), the lighting (well lit), the traffic (light) and lack of pedestrian traffic, the danger posed to us, the suspects and the public from a pursuit on Westheimer was far less than the danger posed by the suspect considering the manner in which the suspect drove and the circumstances. This opinion is based on my observation, my training and three (3) years patrol experience. I believed that it was reasonable to pursue the Oldsmobile during the time we actually pursued it. As soon as there appeared to be an increasing risk to the public we stopped the pursuit. However, the suspects continued to flee and disobey traffic control lights, accelerated as we slowed down and collided with the Plaintiff's vehicle.

In my opinion, any reasonably prudent peace officer in my position would believe that during the pursuit, the need to stop Juan Carlos Guiterrez's Oldsmobile vehicle outweighed the risk to the public by way of our pursuit considering all of the circumstances.

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness "if the evidence is clear, positive and direct, otherwise credible and free from contradiction and inconsistencies, and could have been readily controverted." TEX. R.CIV.P. 166a(c). We find that Glazier and Natho's summary judgment proof meets these criteria.

To be entitled to a summary judgment on the affirmative defense of official immunity, appellants had the burden to establish all the essential elements as a matter of law. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Government employees are entitled to official immunity from suit arising from: (1) the performance of their discretionary duties; (2) in good faith; and (3) within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994); *Wyse v. Dep't of Public Safety,* 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.); *Baker v. Story,* 621 S.W.2d 639, 644 (Tex.App.—San Antonio 1981, writ ref'd n.r.e.). This immunity is based on the sound public policy which encourages public officers to perform their duties without fear of personal liability for negligent or improper performance. *See Chapman v. Gonzales,* 824 S.W.2d 685, 687 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

First, we must determine whether the deputies' actions in pursuing Guiterrez's vehicle were discretionary. We must focus on whether the officers were performing a discretionary function, not on whether the officers had discretion to do an allegedly wrongful act while discharging that function. *Chambers,* 883 S.W.2d at 653. This determination depends on whether the act is discretionary or ministerial. *See Esparza v. Diaz,* 802 S.W.2d 772, 779 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Wyse,* 733 S.W.2d at 227. An act is discretionary if it requires personal deliberation, decision, and judgment. *Id.* While a ministerial act requires obedience to order or the performance of a duty in which the actor is left no choice. *Id.*

The Texas Supreme Court has recently held that when a police officer decides to engage in a high-speed chase, he performs a discretionary act. *Chambers,* 883 S.W.2d at 654. The decision to pursue a particular suspect will fundamentally involve the officer's discretion because he must first elect to undertake pursuit. *Id.* Beyond the initial decision to engage in the chase, a high speed pursuit involves the officer's discretion on a

number of levels, including which route should be followed, at what speed, should back-up be called, and how closely should the fleeing vehicle be pursued. *Id.*

In the present case, appellants' summary judgment proof establishes as a matter of law that Deputies Glazier and Natho were law enforcement officers exercising their discretion when they decided to initiate pursuit of the suspect, Guiterrez. The enforcement of traffic regulations by police officers also involves the exercise of their discretion. *Carpenter v. Barner,* 797 S.W.2d 99, 101 (Tex.App.—Waco 1990, writ denied). Questions of the deputies negligence or the violation of law are immaterial when deciding whether he was performing discretionary functions. *See Vasquez v. Hernandez,* 844 S.W.2d 802, 804 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.); *Carpenter,* 797 S.W.2d at 101. The deputies would be protected by official immunity regardless of the negligent or mistaken exercise of his public duties. *Id.* Thus, we find that the deputies' actions in this case were discretionary.

▇ Secondly, we must determine if Deputies Glazier and Natho were acting within the scope of their authority. We note that it is undisputed that the deputies were acting within the scope of their employment and that their pursuit was in their capacity as governmental employees. An officer acts within the scope of his authority when he performs his official duties—in this case, the enforcement of traffic laws. The fact that the specific act that forms the basis of the suit may have been wrong or negligent does not mean they were acting outside the scope of their authority. *See Baker Hotel of Dallas v. Rogers,* 157 S.W.2d 940, 943 (Tex.Civ. App.—Dallas 1941, writ ref'd w.o.m.).

▇ Finally, we must consider whether the deputies acted in good faith when they decided to pursue the suspect. An officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit. *Chambers,* 883 S.W.2d at 656–57. The "could have

believed" aspect of the good faith test means that in order to be entitled to summary judgment, an officer must prove that a reasonably prudent officer might have believed that the pursuit should have been continued. *Id.* at 656. It does not mean that an officer has to prove that it would have been unreasonable to stop the pursuit; nor must the officer prove that all reasonably prudent officers would have continued the pursuit. *Id.*

To controvert the officer's summary judgment proof on good faith, the plaintiff must do more that show that a reasonably prudent officer could have decided to stop the pursuit; the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Id.*

Appellants argue that they conclusively established good faith by the affidavits of Deputies Glazier and Natho. We note that appellees never alleged, in their petition or in their response to the motion for summary judgment, that Deputies Glazier and Natho acted in bad faith. The deputies' motion for summary judgment is supported by affidavits showing that they acted with probable cause, and therefore, good faith, when they pursued the suspect. In their affidavits, both deputies stated that their actions in pursuing Guiterrez' vehicle were in response to observing his vehicle jump the curb, drive onto the sidewalk, and barely miss a female pedestrian on the sidewalk. Both deputies also stated that in their opinion, any reasonably prudent police officer in their position would believe that during the pursuit, the need to stop Guiterrez vehicle outweighed the risk to the public.

Appellees, however, seem to contend that a car only hitting a curb, based on Deputy Stevenson's field notes, does not come within TEX.REV.CIV.STAT.ANN. art. 6701d, § 60 (Vernon 1977), and therefore, is not a traffic violation. Even if that is true, as long as the deputies reasonably believed that a violation was in progress, the pursuit would not have been illegal although they had been mistaken. Proof of the actual commission of the

offense is not required for a showing of probable cause. *Drago v. State,* 553 S.W.2d 375, 377 (Tex.Crim.App.1977). But the danger created to a pedestrian by the driver's act militates against this being considered a minor, unimportant traffic offense.

The undisputed summary judgment proof shows that the deputies believed Guiterrez had driven in a dangerous manner and posed a significant risk to the public. We find that appellants' summary judgment proof establishes that the deputies' acted in good faith based on their perception of the scene. *See Chambers,* 883 S.W.2d at 657; *City of Houston v. Newsom,* 858 S.W.2d 14, 18 (Tex. App.—Houston [14th Dist.] 1993, no writ). We further find that each deputy's affidavit established the objective good faith of the other deputy. *Id.* Thus, Deputies Glazier and Natho established their right to summary judgment as a matter of law on their affirmative defense of official immunity.

Now, we must determine if appellees' response raised any fact issues precluding summary judgment. Because the deputies conclusively proved that they were protected by official immunity, they cannot be held liable for any negligent acts which they may have committed while acting within their authority. *See Chapman,* 824 S.W.2d at 687; *Baker,* 621 S.W.2d at 644. Therefore any fact issues relating to their alleged negligence are immaterial. A motion for a summary judgment cannot be defeated by the existence of an immaterial fact issue. *Borg–Warner Acceptance Corp. v. C.I.T. Corp.,* 679 S.W.2d 140, 144 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

In their response, appellees stated that the deputies were not entitled to official immunity because police officers are not protected from liability when alleged negligent acts are not a matter within their discretion. Appellees argued that officers have no discretion to drive without due regard for the safety of persons using the roads. *Chambers v. City of Lancaster,* 843 S.W.2d 143, 149 (Tex.Civ. App.—1992), *aff'd in part, rev'd in part,* 883 S.W.2d 650 (Tex.1994). Appellees also stated that Harris County was not entitled to sovereign immunity pursuant to Section 101.021 of the Texas Civil Practice & Remedies Code.

Appellees' summary judgment proof consisted of the affidavit of Pat Tulinski (appellees' attorney), a one page deposition excerpt, and the supplemental field notes of Deputy Stevenson. Tulinski's affidavit states that, "I hereby affirm that the documents marked Exhibit "A" are true and correct copies of deposition excerpts and documents produced by the Defendants." We note that Exhibit "A" is an one page excerpt from an unspecified person's deposition. Deputy Stevenson's field notes are a narrative report of his observations on October 27, 1991, the morning of the pursuit. We note that the field notes did not offer an alternative version of the facts to controvert the facts detailed by the deputies' affidavits. However, appellees' seem to rely on facts omitted from the field notes to raise inferences about the deputies' good faith. Indulging every reasonable inference in appellees' favor, we find that no fact issues were raised by appellees.

In their response, appellees stated that a non-defendant does not substantiate the deputies' version of the facts in his narrative investigation report. Specifically, appellees argue in their brief that Deputy Stevenson never saw a vehicle jump the sidewalk's curb, never saw a vehicle drive on the sidewalk, and never saw a vehicle barely miss a female pedestrian. However, Deputy Stevenson did not state that he was looking at the vehicle and the alleged actions did not occur. He simply stated he didn't see those things happen. Nor did he say that the deputies were incorrect in their observations or that they acted in bad faith. Further, appellees failed to present any evidence that affirmatively shows that the officers did not act in good faith. We find that appellees' summary judgment proof was insufficient to raise a fact issue on Deputies Glazier and Natho's affirmative defense of official immunity. Therefore, the trial court erred as a matter of law in denying the deputies' motion for summary judgment.

A municipality, as a political subdivision of the state, is not liable for the acts or conduct of its officers or employees unless its immunity is waived by the Texas Tort

Claims Act. *Chambers,* 883 S.W.2d at 658. The applicable waiver provision allows a governmental entity to be held liable for the torts of its employees if "the employee would be personally liable to the claimant according to Texas law." *See* TEX.CIV.PRAC. & REM. CODE ANN. § 101.021(1) (Vernon 1986); *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993). Conversely, if the employee is protected from liability under the doctrine of qualified immunity, then the governmental entity's sovereign immunity remains intact. *Id.; see, e.g., Newsom,* 858 S.W.2d at 19; *Carpenter,* 797 S.W.2d at 102; *Wyse,* 733 S.W.2d at 227–28.

Since the deputies in this case were protected by official immunity, the county was also protected. In the absence of the deputies' liability, Harris County was not liable under the Texas Tort Claims Act. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 101.021(1) (Vernon 1986); *Chambers,* 883 S.W.2d at 658; *Wyse,* 733 S.W.2d at 228. Thus, the trial court also erred in denying summary judgment in favor of Harris County.

We find that appellants established their right to summary judgment as a matter of law on their affirmative defenses of official and governmental immunity. The undisputed summary judgment proof shows that the deputies were exercising their discretion within the scope of their authority and in good faith when they pursued Guiterrez for the alleged traffic violations. The trial court erred in denying appellants' motion for summary judgment. Accordingly, we sustain appellants' first and second points of error.

We reverse the denial of summary judgment and render judgment that appellees take nothing.