ACCEPTED
03-15-00300-CV
5939141
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/6/2015 11:44:58 AM
JEFFREY D. KYLE
CLERK

## No. 03-15-00300-CV

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

7/6/2015 11:44:58 AM

JEFFREY D. KYLE
Clerk

TEXAS DEPARTMENT OF PUBLIC SAFETY,

APPELLANT,

V.

ANISTY MIRASOL,

APPELLEE.

No. D-1-GN-14-001479
201ST Judicial District
Appealing the Interlocutory Order from the 345th Judicial District
Travis County, Texas

## APPELLANT'S BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

KARA L. KENNEDY
Chief, Tort Litigation Division

ELSA GIRÓN NAVA
Assistant Attorney General
SBN: 14826900

OFFICE OF THE ATTORNEY GENERAL
Tort Litigation Division
P.O. Box 12548, MC-030
Austin, Texas 78711-2548
(512) 463-2197 receptionist
(512) 457-4459 direct fax
Elsa.Nava@texasattorneygeneral.gov

COUNSEL FOR APPELLANT DPS

## APPELLANT REQUESTS ORAL ARGUMENT

**APPELLANT REQUESTS ORAL ARGUMENT**

Pursuant to TEXAS RULES OF APPELLATE PROCEDURE 38.1(e) and 39.7, Appellant requests oral argument. Oral argument would significantly aid the court in deciding this case and give the court a more complete understanding of the facts presented in this appeal.

## IDENTITY OF PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of the judge and all parties and counsel to the trial court's order appealed from.

Trial judge:

Honorable Stephen Yelenosky
345th Judicial District
Travis County Courthouse
1000 Guadalupe St, 5th Fl.
Austin, TX 78701
(512) 854-9374

Appellant/Defendant:

Texas Department of Public Safety

Counsel for Appellant/Defendant:

Elsa Girón Nava
State Bar No. 14826900
Assistant Attorney General
Tort Litigation Division, MC-030
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197
(512) 475-4459 direct fax
Elsa.Nava@texasattorneygeneral.gov

Appellee/Plaintiff:

Anisty Mirasol

Counsel for Appellee/Plaintiff:

Paul Batrice
State Bar No. 24048344
Batrice Law Firm
1114 Lost Creek Blvd, Suite 440
Austin, TX 78746
(512) 600-1000
(512) 600-0217, fax
Paul@batricelawfirm.com

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT ....................................................... ii

IDENTITY OF PARTIES AND COUNSEL ......................................... iii

TABLE OF CONTENTS.............................................................................iv

INDEX OF AUTHORITIES.......................................................................vi

STATEMENT OF THE CASE....................................................................x

ISSUE PRESENTED...................................................................................xi

STATEMENT OF FACTS .........................................................................2

SUMMARY OF THE ARGUMENTS ........................................................5

ARGUMENTS AND AUTHORITIES ......................................................7

ISSUE ONE:  The trial court erred in denying DPS's Plea to the Jurisdiction and Motion for Summary Judgment based on the official immunity of the DPS Trooper that resulted in DPS maintaining its sovereign immunity .........................................7

A.  STANDARD OF REVIEW.................................................................7

B.  SOVEREIGN IMMUNITY AND TEXAS TORT CLAIMS ACT ................9

C.  OFFICIAL IMMUNITY ................................................................12

    1. Discretionary Act ................................................................12

    2.  Scope of Employment ........................................................13

    3.  Good Faith ........................................................................14

D.  LACK OF EMERGENCY SIRENS DID NOT DEFEAT OFFICIAL IMMUNITY ........................................................................18

E.  ALTERNATIVES WERE CONSIDERED ............................................. 22

F.     BURDEN SHIFTED TO MARISOL TO CONTROVERT OFFICIAL IMMUNITY AND SHE DID NOT SUCEED .................................................23

CONCLUSION ........................................................................................25

CERTIFICATE OF COMPLIANCE.......................................................26

CERTIFICATE OF SERVICE ...............................................................27

APPENDIX .............................................................................................28

Tab 1:  Order on Defendant's Plea to the Jurisdiction and Alternatively, Motion for Summary Judgment, CR 117; and,

Tab 2:  Tex. Civ. Prac. & Rem. Code § 101.021 (West 2005).

# INDEX OF AUTHORITIES

**Cases**

*Bland I.S.D. v. Blue*,
    34 S.W.3d 547 (Tex. 2000) ...........................................................................8

*Brown & Gay Engineering v. Olivares*,
    No. 13-0605, 2015 WL 1897646 (Tex. April 24, 2015) ..........................7, 11

*Carpenter v. Barner*,
    797 S.W.2d 99 (Tex. App.—Waco 1990, writ denied)...............................13

*Chapa v. Aguilar*,
    962 S.W.2d 111 (Tex. App.—Houston [1st Dist.] 1997, no pet.)......20, 21, 22

*City of Amarillo v. Martin*,
    971 S.W.2d 426 (Tex. 1998) .......................................................................15

*City of Lancaster v. Chambers*,
    883 S.W.2d 650 (Tex. 1994) ......................... 5, 11, 12, 13, 14, 15, 16, 17, 24

*City of Richmond v. Rodriguez*,
    No. 01-08-00471-CV, 2009 WL 884810
    (Tex. App.—Houston [1st Dist.] April 2, 2009 no pet. h.) ......................19, 20

*City of San Antonio v. Trevino*,
    217 S.W.3d 591(Tex. App.—San Antonio 2006 no pet.) ............................23

*City of San Antonio v. Ytuarte*,
    229 S.W.3d 318 (Tex. 2007) ...............................................12, 15, 17, 18, 24

*Dallas Area Rapid Transit v. Whitley*,
    104 S.W.3d 540 (Tex. 2003) ....................................................................8, 9

*Dallas County Mental Health & Mental Retardation v. Bossley,*
    968 S.W.2d 339 (Tex. 1998) .........................................................................9

*DeWitt v. Harris County, Texas*,
    904 S.W.2d 650 (Tex. 1995) .......................................................................11

*Edgar v. Plummer*,
        845 S.W.2d 452 (Tex. App.—Texarkana 1993, no writ)..............................13

*Harris County v. Ochoa*,
        881 S.W.2d 884 (Tex. App.—Houston [14th Dist.] 1994, writ denied)........13

*Harris County v. Sykes*,
        136 S.W.3d 635 (Tex. 2004) ........................................................................7

*Kassen v. Hatley*,
        887 S.W.2d 4 (Tx. 1994) ......................................................................11, 12

*Malley v. Briggs*,
        475 U.S. 335 (1986)....................................................................................24

*Mayhew v. Town of Sunnyvale*,
        964 S.W.2d 922 (Tex.1998) ..................................................................... 7, 8

*Rivas v. City of Houston*,
        17 S.W.3d 23 (Tex. App. Houston [14th Dist.] 2000, pet. denied)...............19

*Ryder v. Fayette County*,
        453 S.W.3d 922 (Tex. 2015) ....................................................................8, 9

*Suarez v. City of Texas City*,
        No. 13-0947, 2015 WL 3802865 (Tex. June 18, 2015) ...............................10

*Telhorster v. Tennell*,
        92 S.W.3d 457 (Tex. 2001) ...................................................................12, 17

*Tex. Ass'n. of Business v. Tex. Air Control Bd*,
        852 S.W.2d 440 (Tex. 1993) .......................................................................7

*Tex. Dep't of Crim. Justice v. Miller*,
        51 S.W.3d 583 (Tex. 2001) .......................................................................10

*Tex. Dep't of Parks & Wildlife v. Miranda*,
        133 S.W.3d 217 (Tex. 2004) ...................................................................8, 11

*Tex. Dep't of Transp. v. Jones,*
    8 S.W.3d 636 (Tex. 1999) ........................................................7, 9, 10

*Tex. Natural Res. Conservation Common v. IT-Davy,*
    74 S.W.3d 849 (Tex. 2002) ..................................................................7

*Tex. Natural Res. Conservation Comm'n v. White*,
    46 W.W.3d 864 (Tex. 2001) .................................................................8

*Travis Cent. Appraisal Dist. v. Norman,*
    342 S.W.3d 54 (Tex. 2011) ..................................................................7

*Univ. of Houston v. Barth*,
    403 S.W.3d 851 (Tex. 2013) ................................................................7

*University of Houston v. Clark*,
    38 S.W.3d 578 (Tex. 2000) ..................................................11, 20, 22

*Wadewitz v. Montgomery*,
    951 S.W.2d 464 (Tex. 1997) ...............................6, 12, 14, 20, 22

**Statutes**

TEX. ADMIN. CODE § 217.27(b)..................................................................2

TEX. CIV. PRAC. & REM. CODE CHAPTER 101 ...........................................9

TEX. CIV. PRAC. & REM. CODE § 101.001(3)(a).......................................9

TEX. CIV. PRAC. & REM. CODE § 101.001(5)..........................................14

TEX. CIV. PRAC. & REM. CODE §101.021 (West 2005)..........................10

TEX. CIV. PRAC. & REM. CODE §101.021(1) (West 2005) .....................11

TEX. CIV. PRAC. & REM. CODE §101.021(1)(B)......................................11

TEX. CIV. PRAC. & REM. CODE § 101.025(a) (West 2011)..................9, 10

TEX. GOV'T CODE § 411.002(a) (West 2009) .......................................................9

TEX. REV. CIV. STAT. ANN. ART. 6701d, §24(e)(Vernon 1977) ........................15, 16

TEX. TRANSP. CODE §504.943 (WEST 2015) ....................................................2

TEX. TRANSP. CODE § 546.005 (West 2011).....................................................15, 16

## Rules

TEX. R. APP. P. 9.4(i) (1) .................................................................26

TEX. R. APP. P. 9.4(i) (2) (B).........................................................26

TEX. R. APP. P. 9.4(i) (3) (B)........................................................26

TEX. R. APP. P.38.1(e) ....................................................................... ii

TEX. R. APP. P. 39.7............................................................................ ii

## STATEMENT OF THE CASE

*Nature of the case.* This case pertains to an automobile accident during a traffic stop conducted by a Texas Department of Public Safety Trooper as limited by the Texas Tort Claims Act. CR 3, 32.[1] The Texas Department of Public Safety ("DPS") asserts that its Trooper's official immunity cloaked DPS with sovereign immunity. CR 21-65.

*Course of proceedings.* On April 30, 2015, a hearing was held before Judge Stephen Yelenosky, sitting in the 345th Judicial Court, in Travis County, Texas, regarding other motions in this case. CR 75-106, 108.[2] Judge Yelenosky ordered that he would rule on DPS's Plea to the Jurisdiction and Alternatively Motion for Summary Judgment by submission. CR 108. On May 14, 2015, Judge Yelenosky signed the order denying DPS's dispositive motions. CR 117.

*Trial court disposition.* On May 14, 2015, Judge Yelenosky signed the order denying DPS's Plea to the Jurisdiction and Alternatively Motion for Summary Judgment. CR 117. On May 15, 2015, DPS filed its notice of appeal. CR 118.

---

[1] The Clerk's Record consists of two volumes and will be referred to as "CR." There is no Reporter's Record.

[2] Travis County has a central docketing system. Judge Yelenosky was presiding in the courtroom for walk-in Motions for Continuances and ruled on Ms. Marisol's Motions for Continuances. CR 108.

# ISSUE PRESENTED

**ISSUE ONE**:  The trial court erred in denying DPS's Plea to the Jurisdiction and Motion for Summary Judgment based on the official immunity of the DPS Trooper that resulted in DPS maintaining its sovereign immunity.

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
AUSTIN, TEXAS

TEXAS DEPARTMENT OF PUBLIC SAFETY,

APPELLANT,

V.

ANISTY MIRASOL,

APPELLEE.

No. D-1-GN-14-001479
201ST Judicial District
Appealing the Interlocutory Order from the 345th Judicial District
Travis County, Texas

**APPELLANT'S BRIEF**

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

NOW COMES Appellant Texas Department of Public Safety and respectfully submits its Appellant's brief. DPS appeals the order denying its Plea to the Jurisdiction and Motion for Summary Judgment. CR 117.

For clarity, Appellant Texas Department of Public Safety will be referred to as "DPS" and Appellee Anisty Mirasol will be referred to as "Ms. Mirasol".

On May 24, 2012, DPS Trooper Thomas V. Goodson was on routine patrol, in the course and scope of his employment with DPS. CR 32-34, 40-42, 44-46 (dash cam video).[3] He was initially traveling westbound on 11th Street, in Austin, Texas, driving a marked DPS vehicle. CR 34, 38, 40-42, 44-46. He spotted a pickup truck without a front license plate[4] traveling eastbound on 11th Street. CR 32-34, 38, 40-42, 44-46. He made the discretionary decision to make the traffic stop and safely turned his patrol vehicle from westbound to eastbound in order to conduct the traffic stop of the pickup truck. CR 32-34, 38, 40-42, 44-46.

He activated his red and blue emergency lights located on top of his DPS vehicle. CR 32-36, 38, 40-42, 44-46. The Trooper traveled a few blocks with his emergency lights activated behind the pickup truck. CR 38, 40-42, 44-46. A witness statement confirms that the Trooper had his emergency lights flashing:

> Officer going east on E. 11th trying to get a 1967 Ford pick-up to pull over. Ford pick-up turn (sic) left in an alley. Officer followed with lights flashing & hit by a white car travelling west on E. 11th. He was following the Fort pick-up for a (sic) least 3 blocks. All of his lights were flashing. I was next to him for 2 of those blocks.

CR 35.

---

[3] The dash cam video can be viewed on Windows Media player. The video of this traffic stop starts at 07:35 on the DVD. The "subtitles" should be activated on the DVD player to see the onscreen lettering.

[4] See Tex. Transportation Code §504.943 (West 2015) and Tex. Admin. Code §217.27(b).

The dash cam video depicts the Trooper's view of the rear of the pickup truck and the "L" will appear on the screen indicating that the emergency lights were activated. CR 40-42, 44-46.

The Trooper considered alternatives to the traffic stop. He thought of not making the stop at all, but there was little to moderate traffic and believed he could stop the pickup truck safely. CR 41. He was able to read the license plate and read it to dispatch to identify the truck as well as to let dispatch know he was making the traffic stop. CR 41. He could not read the license plate number before that because the front one was missing and he had to get close enough to read the rear plate number. CR 41.

Finally, the pickup truck slowed and turned on its left turn signal. CR 38, 40-42, 44-46. The pickup truck made the left turn into a parking lot and the Trooper slowly followed, slowly making the left turn. CR 38, 40-42, 44-46. He believed the way was clear when he made the left turn. CR 41. Then he realized that Ms. Mirasol's car was going too fast and she collided with his vehicle. CR 38, 41, 44-46. Before the Trooper could complete the left turn, Ms. Marisol's vehicle collided with the Trooper's vehicle. CR 32-36, 40-42, 44-46.

The dash cam video indicates that Ms. Marisol did not slow, did not brake, did not take an evasive maneuver and appears to be traveling faster than the posted

3

30 m.p.h zone. CR 44-46. Subsequently, Ms. Mirasol filed a lawsuit against DPS alleging that she was injured as a result of this minor accident. CR 48-52.

**ISSUE ONE**: The trial court erred in denying DPS's Plea to the Jurisdiction and Motion for Summary Judgment based on the official immunity of the DPS Trooper that resulted in DPS maintaining its sovereign immunity.

DPS met its burden to prove that its Trooper was entitled to official immunity for (1) the performance of discretionary duties (2) while acting in the course and scope of his employment and (3) acting in "good faith." *City of Lancaster v. Chambers*, 883 S.W. 2d 650, 656 (Tex. 1994). It was uncontroverted that the Trooper was performing discretionary duties (conducting a traffic stop), while in the course and scope of his employment. CR 41, 50.

The DPS Trooper was acting in good faith by proving that "a reasonably prudent officer, under the same or similar circumstances, *could have believed* that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in the manner that he conducted the traffic stop. *City of Lancaster v. Chambers*, 883 S.W. 2d 650, 656 (Tex. 1994). From his perspective, he believed the way was clear to make the left turn when he followed the pickup truck into the parking lot. CR 41. By the time the DPS trooper realized that Ms. Marisol's car was indeed traveling too fast, the collision occurred. CR 41.

Even if Ms. Marisol asserted that the Trooper was negligent in the manner he conducted the traffic stop, the Supreme Court has held that findings of negligence or violations of law do not bar an individual from invoking the protection of the doctrine of "official immunity." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n.1 (Tex. 1997). Therefore, even if Trooper Goodson's conduct was negligent, he is entitled to official immunity and DPS is entitled to maintain its sovereign immunity. *Id.*

**ISSUE ONE**: The trial court erred in denying DPS's Plea to the Jurisdiction and Motion for Summary Judgment based on the official immunity of the DPS Trooper that resulted in DPS maintaining its sovereign immunity.

## A.  STANDARD OF REVIEW

A plea to the jurisdiction contests the authority of a court to determine the subject matter of the case. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999). The standard of review of a trial court's ruling on a plea to the jurisdiction based on sovereign immunity[5] is *de novo*. *Tex. Natural Res. Conservation Common v. IT-Davy,* 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

Subject matter jurisdiction cannot be presumed and cannot be waived. *Univ. of Houston v. Barth*, 403 S.W.3d 851, 854 (Tex. 2013) citing *Tex. Ass'n. of Business v. Tex. Air Control Bd*, 852 S.W.2d 440, 443-44 (Tex. 1993). Where a governmental entity challenges jurisdiction on the basis of immunity, "the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of

---

[5] Although the terms are often used interchangeably, "sovereign immunity" applies to the State and its agencies and "governmental immunity" applies to political subdivisions. *Brown & Gay Engineering v. Olivares*, No. 13-0605, 2015 WL 1897646, at *3 (Tex. April 24, 2015) citing *Travis Cent. Appraisal Dist. v. Norman,* 342 S.W.3d 54, 57-58 (Tex. 2011); see also *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

immunity. *Ryder v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) citing *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). To determine if the plaintiff has met that burden, the court must "consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) citing *Tex. Natural Res. Conservation Comm'n v. White*, 46 W.W.3d 864, 868 (Tex. 2001). A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004) citing *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

The standard of review for a plea to the jurisdiction based on evidence generally mirrors that of a motion for summary judgment. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). After the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228.

Whether a trial court has subject matter jurisdiction is a question of law. *Mayhew,* 964 S.W.2d at 928. Sovereign immunity from suit defeats a trial court's

subject matter jurisdiction. *Tex. Dep't. of Transportation v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998).

## B. SOVEREIGN IMMUNITY AND THE TEXAS TORT CLAIMS ACT

A governmental unit is immune from suit and liability unless the immunity from suit has been waived and the State consents. *Ryder v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) citing *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); TEX. CIV. PRAC. & REM. CODE §101.025(a) (West 2011).

DPS is a governmental unit pursuant to TEX. GOV. CODE §411.002(a) (West 2009) and TEX. CIV. PRAC. & REM. CODE § 101.001(3)(a). DPS challenged the court's subject matter jurisdiction in its Plea to the Jurisdiction and Alternatively, its Motion for Summary Judgment based on its employee's official immunity. CR 21-65. DPS asserted that the evidence proves as a matter of law that there is no waiver of DPS's sovereign immunity under the Texas Tort Claims Act.

The Texas Legislature waived sovereign immunity "only to a limited degree" when it enacted the Texas Tort Claims Act (TTCA). TEX. CIV. PRAC. & REM. CODE CHAPTER 101, *et seq*; *Bossley,* 968 S.W.2d at 343; see *Ryder v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015). A plaintiff must allege a waiver of sovereign immunity as provided in the TTCA. The TTCA provides:

A governmental unit in the state is liable for:

(1)    property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
    (A)    the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and,
    (B)    *the employee would be personally liable to the claimant according to Texas law*;

(2)    personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE §101.021 (West 2005) (emphasis added). Although this provision speaks in terms of a waiver of immunity from *liability*, the TTCA also waives immunity from suit to the same extent. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject matter jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). The TTCA creates a unique statutory scheme in which the two immunities are co-extensive: "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter." TEX. CIV. PRAC. & REM. CODE § 101.025(a) (West 2011); *Miller*, *Id.* The immunity waiver is therefore, intertwined with the merits of a claim under the TTCA. *Suarez v. City of Texas City*, No. 13-0947, 2015 WL 3802865, at

10

*5 (Tex. June 18, 2015). A plea to the jurisdiction is appropriate in this case because DPS is immune from suit based on its employee's official immunity.

In this case, there is use of a motor vehicle which falls under the waiver of immunity in the TTCA but only if the "employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE §101.021(1)(B). Therefore, if the DPS employee is not liable because of official immunity, then DPS maintains its immunity from suit. TEX. CIV. PRAC. & REM. CODE §101.021(1) (West 2005); *DeWitt v. Harris County, Texas*, 904 S.W.2d 650, 653 (Tex. 1995) (holding that if the employee is protected from liability by official immunity, the government retains its governmental immunity).

Official immunity is an affirmative defense and each element of the defense must be pled and proven by the party asserting it. *University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000) citing *Kassen v. Hatley*, 887 S.W.2d 4, 8-9 (Tx. 1994) and *Brown & Gay Engineering v. Olivares*, No. 13-0605, 2015 WL 1897646, at *8 (Tex. April 24, 2015) citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

When as here, the governmental unit challenges the existence of jurisdictional facts, the court must consider the relevant evidence submitted by the parties. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004).

### C. OFFICIAL IMMUNITY

Official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their duties. *Telhorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2001)(official immunity applied in an arrest case) citing *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994). A governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) while acting in the course and scope of their employment and (3) acting in "good faith." *Telhorster, Id.*; *University of Houston v. Clark*, 38 S.W.3d 578, 581 (Tex. 2000) *citing City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994) (seminal case establishing the official immunity standard in a pursuit); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997)(official immunity in an emergency response call); and *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 319 (Tex. 2007) (official immunity in a pursuit case).

### 1. Discretionary Act

The first prong of official immunity involves performing a discretionary act. *Chambers*, 883 S.W.2d at 655. A discretionary act is an act that requires personal deliberation, decision and judgment. *Id.* In determining whether conduct is discretionary, we focus on whether the public official was performing a discretionary function, not on whether he had discretion to do an allegedly wrongful act while discharging that function. *See Chambers*, 883 S.W.2d at 653-54.

In some situations, such as high-speed chases, investigations and traffic stops, an officer's operation of a vehicle involves personal deliberation or the exercise of professional expertise, decision, or judgment. *Chambers*, 883 S.W.2d at 654-55, citing *Carpenter v. Barner*, 797 S.W.2d 99, 101 (Tex. App.—Waco 1990, writ denied)(county constable was protected by immunity when he stopped a vehicle whose taillights were not operating) and *Edgar v. Plummer*, 845 S.W.2d 452, 454 (Tex. App.—Texarkana 1993, no writ)(enforcement of traffic regulations by peace officers involves the exercise of discretion).

As a matter of law, an officer's decision to initiate a traffic stop or pursuit is a discretionary function. *Chambers,* 883 S.W.2d at 654-55; see also *Harris County v. Ochoa*, 881 S.W.2d 884, 887 (Tex. App.—Houston [14th Dist.] 1994, writ denied)(initiating a pursuit after observing a traffic violation is discretionary).

It is uncontroverted that Trooper Goodson was performing discretionary acts when he decided to conduct a traffic stop of the pickup truck with the missing front license plate, and when he activated his emergency lights in order to pull over the pickup truck. CR 38, 40-42, 44-46. Therefore, the first prong of official immunity is met.

### 2. Scope of Employment

The second prong of official immunity is that the officer be in the scope of his employment. *Id.* This means "the performance for a governmental unit of the duties

13

of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by a competent authority." TEX. CIV. PRAC. & REM. CODE § 101.001(5); *Chambers*, 883 S.W. at 658 (officers were acting within the scope of their authority—each officer was on duty, in a squad car, pursuing a suspect).

Trooper Goodson took a law enforcement action which was to initiate the traffic stop, was driving a marked DPS vehicle while he was on patrol in the course and scope of his employment with DPS. CR 38-42, 44-46. Ms. Marisol admits in her original petition that the Trooper was a DPS employee at the time of the accident. CR 50. Therefore, the second prong of official immunity is met.

### 3. "Good Faith"

The third prong of official immunity is acting in "good faith." The Texas Supreme Court adopted a test for measuring this third element in the seminal case, *City of Lancaster v. Chambers*, 883 S.W. 2d 650 (Tex. 1994), as follows:

> A reasonably prudent officer, under the same or similar circumstances, *could have believed* that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

*City of Lancaster v. Chambers*, 883 S.W. 2d 650, 656 (Tex. 1994) (emphasis added). The Texas courts have held that findings of negligence or violations of law do not bar an individual from invoking the protection of the doctrine of "official immunity." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 n.1 (Tex. 1997). Therefore, even if

14

an officer's conduct was negligent, the officer is cloaked with immunity pursuant to the good faith doctrine and is not liable for any alleged damages. *Id.*

If the officer meets his burden of proving he acted in good faith, then the burden shifts, and the nonmovant must present evidence that "***no*** reasonable person in the officer's position could have could have assessed the need and risks as the police officers did in this case." *City of Lancaster v. Chambers*, 883 S.W.2d at 658.

Moreover, for a plaintiff to defeat official immunity he must do more than argue that different officers have different opinions on what they would have done. The relevant test is "not whether the officers assessed the needs and risks differently, but whether ***no reasonable prudent officer*** could have assessed the need and risks as the police officers did in this case." *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007)(emphasis added).

Furthermore, this Court explained in *Chambers* that the statutory duty imposed on drivers of emergency vehicles is the duty to exercise appropriate regard for the safety of others (previously called "due regard"). *Chambers*, 883 S.W.2d at 656. This statutory duty is located in TEX. TRANSP. CODE § 546.005[6] (West 2011), "Duty of Care," that provides:

---

[6] Tex. Rev. Civ. Stat. Ann. Art. 6701d, § 24(e) (Vernon's 1977) was recodified in 1995 into TEX. TRANSPORTATION CODE §546.005 (West 2011) and the Legislature replaced the phrase "with due regard" to "appropriate regard." See *City of Amarillo v. Martin,* 971 S.W.2d 426, 431 (Tex. 1998). "The Legislature's substitution of "appropriate regard" for "due regard" lends credence to our view

This chapter does not relieve the operator of an authorized emergency vehicle from:

(1) the duty to operate the vehicle with appropriate regard for the safety of all persons; or

(2) the consequences of reckless disregard for the safety of others.

TEX. TRANSP. CODE § 546.005 (West 2011) (emphasis added).

The "appropriate regard" provision is the ordinary negligence standard that does not apply to liability in the context of official immunity as this Court explained:

Despite similarity between this standard and a general negligence test, no equivalence should be implied. While art. 6701d provides the test for whether an emergency vehicle operator is guilty of ordinary or gross negligence, it does not determine *whether* immunity should be extended. *See* Tex. Rev. Civ. Stat. Ann. Art. 6701d, §24(e) (Vernon 1977) (stating that the article's provisions as to duty do not relate to consequences of breach of such duty: "nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others"). That art. 6701d may be read to inferentially rebut the defense of official immunity for operators of emergency vehicles in some instances, by collapsing the duty and good faith inquiries, is a consequence of the legislature's framing of the statutory duty. But in the absence of an expression of clear legislative intent to abolish official immunity altogether in this context, we hold that a violation of art. 6701d does not preclude application of the official immunity doctrine to negligent emergency vehicle operators.

*City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 n.5 (Tex. 1994) (emphasis in original). This statute supports official immunity even if the officer was negligent.

---

that the Legislature intended for emergency vehicle operators in emergency situations to be cognizant of public safety, but only intended to impose liability for reckless conduct." *Id.*

In *Chambers*, this Court said that courts should focus on what the defendant "could have believed," that is, on the reasonableness of the officer's perception under the circumstances surrounding the incident, not on the facts as they appear through the clarity of hindsight. *Telthorster*, 92 S.W.3d at 464, citing *Chambers*, 883 S.W.2d at 656. A court must look for evidence of the officer's reasonable perception of need and risk. *City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 320-21 (Tex. 2007).

Trooper Goodson proved that a reasonable and prudent officer *could have believed* under the circumstances that the need outweighed the risks as he perceived them at the time. CR 39-65.

- The benefit or need of this kind of traffic stop includes enforcing the traffic laws since a missing license plate is a Class C misdemeanor. CR 41.

- In addition, license plates are important because law enforcement officers depend on the plates to identify vehicles should the vehicle be involved in an accident, a traffic violation or other type of crime. CR 41.
- The Trooper considered the risks involved and believed they were minimal considering that the weather was clear and not raining, the roadway was well paved and dry, it was daylight and his view was clear, unobstructed and the road was straight. CR 41.

- There was little to moderate traffic. CR 41.

- Neither he nor the pickup truck was traveling at an excessive rate of speed and the speed zone at the location was 30 m.p.h. CR 41, 32.

- He activated his red and blue emergency lights located on top of his DPS vehicle. CR 32-36, 38, 40-42, 44-46.

- A witness statement confirms that the Trooper had his emergency lights flashing "for a (sic) least 3 blocks all of his lights [were] flashing. I was next to him for 2 of those blocks." CR 35.

- The Trooper considered alternatives to the traffic stop. He thought of not making the stop at all, but there was little to moderate traffic and believed he could stop the pickup truck safely. CR 41. He was able to read the license plate and read it to dispatch to identify the truck as well as to let dispatch know he was making the traffic stop. CR 41. He could not read the license plate number before that because the front one was missing and he had to get close enough to read the rear plate number. CR 41.

- The Trooper slowly followed, slowly making the left turn. CR 38, 40-42, 44-46.

- He believed the way was clear when he made the left turn. CR 41.

- When he realized that Ms. Mirasol's car was going too fast, it was too late and she collided with his vehicle. CR 38.

- He cared about the safety of the public and his safety as well. CR 41.

From the Trooper's perspective at the time, he believed that the way was clear to make the left turn. CR 41. Even if he misjudged the speed of Ms. Marisol's vehicle, CR 41, this is not sufficient to deny the Trooper official immunity. *Ytuarte*, 229 S.W.3d at 320-21 (court must look for evidence of the officer's reasonable perception).

### D. LACK OF EMERGENCY SIRENS DID NOT DEFEAT SOVEREIGN IMMUNITY AND OFFICIAL IMMUNITY

The Trooper had his emergency lights activated; however, he did not have his emergency sirens activated before the accident. CR 38, 40-42. The lack of the emergency sirens does not defeat the application of official immunity. In *Rivas v. City of Houston*, the paramedic had decided to go from a Code 1 (nonemergency) to a Code 2 (emergency) and entered the intersection against a red light without emergency lights and sirens activated. *Rivas v. City of Houston*, 17 S.W.3d 23, 27-28 (Tex. App. Houston [14th Dist.] 2000, pet. denied). The *Rivas* court held that there was no waiver of sovereign immunity because the paramedic was entitled to official immunity.

In *City of Richmond v. Rodriguez*, the officer stated that he activated his emergency lights but never activated his emergency sirens during the pursuit of a motorcycle going at a high speed without a headlight. *City of Richmond v. Rodriguez*, No. 01-08-00471-CV, 2009 WL 884810, at *3-4 (Tex. App.—Houston [1st Dist.] April 2, 2009 no pet. h.). The *Rodriguez* plaintiff alleged he created a fact question on good faith because he testified that the officer not only did not have his emergency sirens activated but he did not have his emergency lights activated either and that the suspect's motorcycle did have his headlight on. *Id.* The *Rodriguez* court held that the officer was entitled to official immunity because the officer's affidavit explained the risks vs. benefits and alternatives. *Id.* Moreover, the *Rodriguez* court

19

held that plaintiff's allegations of no lights and sirens did not create a fact question because:

> As Rodriguez's argument does not address the need and risk factors in *Wadewitz*, it is insufficient to controvert Sergeant Elliott's proof on good faith. *See Clark*, 38 S.W.3d at 587 (stating that because plaintiff's expert's testimony on good faith is not substantiated with reference to each aspect of the need and risk balancing test, it is conclusory and is insufficient to controvert the defendant's proof on good faith").

*City of Richmond v. Rodriguez*, No. 01-08-00471-CV, 2009 WL 884810, at *5 (Tex. App.—Houston [1st Dist.] April 2, 2009 no pet. h.).

In the case at bar, Ms. Marisol did not present any evidence as to why the lack of emergency sirens, under the circumstances, does not support the Trooper's belief that risks were minimal.

In *Chapa v. Aguilar*, the court held that the officer was entitled to official immunity. *Chapa v. Aguilar*, 962 S.W.2d 111, 115 (Tex. App.—Houston [1st Dist.] 1997, no pet.). The Deputy Constable Romeo Chapa was on patrol in a marked police car and while stopped at an intersection, he saw a van in front of him run the red light. Officer Chapa turned on his flashers, but not his siren, drove into the intersection and collided with a vehicle driven by the plaintiff. *Chapa v. Aguilar*, 962 S.W.2d at 113.

The investigating officer subsequently faulted Officer Chapa concluding in his report that Chapa "used poor judgment in his attempt to stop the violator in front

20

of him" and "did not enter the intersection (on the red light) in a safe and cautious manner." Officer Chapa was suspended for one day without pay and ordered to attend a police driver training course. *Id.*

The *Chapa* court of appeals held that Officer Chapa's affidavit was sufficient to support official immunity:

> I was on duty and patrolling southbound on Fondren when I observed a van that was directly in front of me about thirty feet away blatantly and flagrantly run a red light. I considered the facts observable to me such as: the condition of the streets, it was clear and dry and visibility was good, I was on a divided street with three lanes on each side of a median, traffic was light. Based on the facts known to me, I determined that I needed to attempt to apprehend the driver of the van and that the risk to the public was slight.

*Chapa v. Aguilar*, 962 S.W.2d at 114-15. The *Chapa* court stated the purpose and standard of the good faith defense as follows:

> *The good faith standard recognizes that an officer may act in good faith and still be negligent.* Were we to rely upon the department's internal report citing appellant for negligence, we would be using negligence as proof of bad faith. Such a result decimates the concept of governmental immunity, *because its very essence is the protection of officers from the consequences of their negligent acts.* The standard is turned on its head: if there is evidence of negligence, we will not protect the officer from the consequences of his negligence!
>
> Our holding today should not be read as an endorsement of high speed chases or reckless pursuit. But when we subject what *is essentially a split-second decision to standards we draft at out leisure,* we run the risk of *stifling a peace officer's ability to unhesitatingly respond to crisis.* This guts the very purpose of good faith immunity. *We would be narrowing what should remain a broad, even forgiving, standard.*

*Chapa v. Aguilar*, 962 S.W.2d at 115 (emphasis added).

These cases support official immunity in the case before this Court. The Trooper activated his emergency lights and he believed that the way was clear to make the left turn. CR 41, 44-46.

### E. ALTERNATIVES WERE CONSIDERED

To establish the good faith prong of official immunity, an officer must show, among other factors, that an officer considered the availability of alternatives, if any, as part of balancing the need versus risks analysis. *Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 (Tex. 1997).

In this case, Trooper Goodson considered the alternative of not making the stop at all, but there was little to moderate traffic and he believed that he could safely stop the pickup truck. CR 41. When he was able to read the rear license plate, he read it to dispatch to identify the truck. CR 41. He could not read the license plate number prior to that because the front one was missing and he had to get close enough to read the rear plate number. CR 41.

These alternatives are sufficient to prove good faith. In *University of Houston v. Clark*, this Court held that the officer was entitled to official immunity when he considered *one* alternative—calling in the license plate number to dispatch but not being able to do it. *University of Houston v. Clark*, 38 S.W.3d at 586. In *Clark*, one of the officers stated in his affidavit regarding alternatives, that he "followed the

22

suspect at a distance and was not able to get close enough to the suspect vehicle to obtain its license plate number." *Id.* This Court held that considering *one* alternative was sufficient to meet the good faith analysis. *Id.*

In *City of San Antonio v. Trevino*, the only alternative to the pursuit considered by the police officer was the license plate number, but he was unable to get close enough to the suspect's car to read its license plate. *City of San Antonio v. Trevino*, 217 S.W.3d 591, 596 (Tex. App.—San Antonio 2006 no pet.). This was sufficient to satisfy the alternatives requirement of the good faith test. *Id.* Notably, the *Trevino* officer did not have either his lights or sirens activated at the time the suspect's car collided with the plaintiff's car; nonetheless, the court held that the City was entitled to the official immunity defense. *Trevino*, 217 S.W.3d at 596.

For these reasons, DPS met its burden of proof regarding official immunity. The burden then shifted to Ms. Marisol to controvert official immunity and she did not.

### F. THE BURDEN SHIFTED TO MIRASOL TO CONTROVERT OFFICIAL IMMUNITY AND SHE DID NOT SUCCEED

In order for Ms. Marisol to controvert and defeat official immunity, she had to prove, and did not, as follows:

> To controvert the officer's summary judgment proof on good faith, the *plaintiff must do more than show that a reasonably prudent officer*

23

*could have decided* to stop the pursuit; the plaintiff must show that "***no*** reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." [citations omitted].

*City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994). This Court further explained:

> Moreover, for a plaintiff to defeat official immunity he must do more than argue that different officers have different opinions on what they would have done. The relevant test is "not whether the officers assessed the needs and risks differently, but whether ***no reasonable prudent officer*** could have assessed the need and risks as the police officers did in this case."

*City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007) (emphasis added).

Ms. Marisol did not offer any expert opinion that *no reasonable prudent officer* could have assessed the need and risks as Trooper Goodson did in this case. CR 1-129. She did not offer any deposition testimony nor affidavits from any law enforcement expert regarding official immunity. CR 1-129. Even if she had offered evidence that another officer would have acted differently, that would still not defeat official immunity because: "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 657 (Tex. 1994) citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

## CONCLUSION

Trooper Goodson is entitled to official immunity based on the facts of this case as outlined above because he has established that a reasonable and prudent officer, in the same or similar circumstances, *could have believed* that the need outweighed the minimal risks to this traffic stop and that he considered alternatives. Ms. Marisol did not present any expert opinion that *no reasonable prudent officer* could have assessed the need and risks as Trooper Goodson did. Therefore, based on Trooper Goodson's official immunity, DPS maintains its sovereign immunity and Ms. Marisol's suit should be dismissed.

WHEREFORE, Appellant Texas Department of Public Safety prays that this appeals court reverse the trial court's order denying its Plea to the Jurisdiction and its Motion for Summary Judgment, prays that the court reverse and render judgment, assess the costs of court against Appellee, and prays for all other relief to which it may show itself justly entitled.

RESPECTFULLY SUBMITTED,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

KARA KENNEDY
Division Chief, Tort Litigation

/s/ Elsa Girón Nava

_____

ELSA GIRÓN NAVA
Assistant Attorney General
State Bar No. 14826900
Tort Litigation Division, Mail Stop 030
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2197 / (512) 457-4459, direct fax
Elsa.Nava@texasattorneygeneral.gov
COUNSEL FOR APPELLANT DPS

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. 9.4(i)(3), this is to certify that this brief complies with the type-volume limitations of TEX. R. APP. 9.4(i)(2)(B)(must not exceed 15,000 words). This brief contains 5,689 words in a proportionally spaced typeface, exclusive of the exempted portions set forth in TEX. R. APP. 9.4(i)(1). This brief has been prepared using Times New Roman 14 point in text and Times New Roman 12 point in footnotes produced by Microsoft Word 2010 software.

/s/ Elsa Girón Nava

_____

ELSA GIRÓN NAVA
Assistant Attorney General

26

## CERTIFICATE OF ELECTRONIC SERVICE

I certify that on July 6, 2015, at approximately 11:00 a.m., I served a copy of this document on the party below by electronic service concurrently with the electronic filing of the document. The electronic transmission was reported as complete. My e-mail address is Elsa.Nava@texasattorneygeneral.gov

Paul Batrice
Batrice Law Firm
1114 Lost Creek Blvd, Suite 440
Austin, TX  78746
(512) 600-1000
(512) 600-0217, fax
Paul@batricelawfirm.com
Counsel for Appellee

/s/  Elsa Girón Nava

_____
ELSA GIRÓN NAVA
Assistant Attorney General

**No. 03-15-00300-CV**

---

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT
AUSTIN, TEXAS

---

TEXAS DEPARTMENT OF PUBLIC SAFETY,

APPELLANT,

V.

ANISTY MIRASOL,

APPELLEE.

---

No. D-1-GN-14-001479
201ST Judicial District
Appealing the Interlocutory Order from the 345th Judicial District
Travis County, Texas

---

**APPELLANT'S APPENDIX**

---

Tab 1: Order on Defendant's Plea to the Jurisdiction and Alternatively, Motion for Summary Judgment, CR 117; and,

Tab 2: TEX. CIV. PRAC. & REM. CODE § 101.021 (West 2005).

Tab 1:

Order on Defendant's Plea to the Jurisdiction and Alternatively,
Motion for Summary Judgment, CR 117

Filed In The District Court
of Travis County, Texas
on 5.14.2015
at 11:40A M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-001479

| | | |
|---|---|---|
| ANISTY MIRASOL | § | IN THE DISTRICT COURT OF |
| Plaintiff, | | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| PUBLIC SAFETY | | |
| Defendant. | § | 201ST JUDICIAL DISTRICT |

## ORDER DENYING DEFENDANT'S PLEA TO THE JURISDICTION
## AND MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant Texas Department of Public Safety's

Plea to the Jurisdiction and Alternatively, Motion for Summary Judgment and the court having

heard the pleadings by submission and considered the law and the facts, finds as follows:

IT IS ORDERED, ADJUDGED and DECREED that Defendant's Plea to the Jurisdiction

is DENIED.

IT IS ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary

Judgment is DENIED.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that all relief not expressly

granted is herein DENIED.

SIGNED May 14, 2015

Hon. Stephen Yelenosky
345th Judicial District
JUDGE PRESIDING

Elsa Girón Nava, Assistant Attorney General, Attorney for Defendant, **FAX: (512) 475-4459**
Elsa.Nava@texasattorneygeneral.gov

Paul Batrice, Attorney for Plaintiff, **FAX (512) 600-0217**
Paul@batricelawfirm.com

EXHIBIT A

Tab 2:

Tex. Civ. Prac. & Rem. Code § 101.021 (West 2005)


Effective:[See Text Amendments]

Vernon's Texas Statutes and Codes Annotated Currentness
  Civil Practice and Remedies Code(Refs & Annos)
    Title 5. Governmental Liability
      ⌐▣ Chapter 101. Tort Claims (Refs & Annos)
        ⌐▣ Subchapter B. Tort Liability of Governmental Units (Refs & Annos)
          ➡➡ § 101. 021. Governmental Liability

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

  (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

  (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

CREDIT(S)
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

HISTORICAL AND STATUTORY NOTES

2005 Main Volume

Prior Laws:
    Acts 1969, 61st Leg., p. 874, ch. 292, § 3.
    Acts 1973, 63rd Leg., p. 77, ch. 50, § 1.
    Acts 1983, 68th Leg., p. 3084, ch. 530, § 1.
    Vernon's Ann.Civ.St. art. 6252-19, § 3(b).
Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.